ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL VI

| ROLANDO BARREIRO VÁZQUEZ<br><br>Recurrente<br><br>v.<br><br>DEPARTAMENTO DE CORRECIÓN Y REHABILITACCIÓN<br><br>Recurridos | KLRA202400633 | *Revisión Administrativa* procedente del Departamento de Corrección y Rehabilitación<br><br>Caso Núm.: B-1362-24<br><br>Sobre: División de Remedios Administrativos |
|---|---|---|

Panel integrado por su presidenta la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo.

Ortiz Flores, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Comparece ante nosotras, Rolando Barreiro Vázquez (Sr. Barreiro Vázquez; recurrente) y solicita la revisión judicial de la *Respuesta al Miembro de la Población Correccional*, número B-1362-24, que emitió la División de Remedios Administrativos del Departamento de Corrección y Rehabilitación (DCR), el 11 de octubre de 2024.

Luego de examinar los méritos del recurso, resolvemos confirmar la respuesta recurrida.

**I**

El 5 de octubre de 2024, el Sr. Barreiro Vázquez sometió una *Solicitud de Remedio Administrativo*, número B-1362-24, ante el DCR.[1] Alegó que, el 4 de octubre de 2024, el teniente Loubriel y otros oficiales, lo sacaron de su celda, recibió empujones, halones de pelo y gritos obscenos, los cuales hacían referencia a su cabello. Señaló, además, que al regresar a su celda encontró lo siguiente: su pasta y crema por todo el suelo; que le pisotearon el lugar donde dormía, y; que le faltaban propiedades. Añadió que todo lo anterior podía ser una represalia por

---

[1] Véase, Apéndice del recurso, *Solicitud de Remedio Administrativo* B-1362-24. En el apéndice del recurso, el recurrente incluyó varios documentos de otras tres (3) quejas, a saber: B-991-24, B-1135-24 y B-390-24. Estos escritos no están sujetos a nuestra función revisora.

parte del teniente Loubriel, debido a que había presentado un pleito legal contra este por comentarios sobre su religión.

El 11 de octubre de 2024, el recurrente recibió la respuesta de su *Solicitud de Remedio Administrativo*.[2] En la respuesta emitida, el DCR desestimó la solicitud debido a que no conllevaba remediar una situación.

Inconforme, el 12 de noviembre de 2024, el Sr. Barreiro Vázquez compareció ante este Tribunal de Apelaciones. En esencia, señala que el DCR incidió al desestimar la *Solicitud de Remedio Administrativo* por el fundamento de que este solo emitió comentarios y opiniones que no conllevan remediar una situación de su confinamiento.

**II**

**A.**

La revisión judicial de las determinaciones finales administrativas por este tribunal se realiza al amparo de la Ley Núm. 38-2017, 3 LPRA sec. 9601 *et seq.*, según enmendada, conocida como *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico* (LPAU). El precitado estatuto dispone que la revisión judicial se circunscribirá a evaluar lo siguiente: (1) si el remedio concedido por la agencia es el adecuado; (2) si las determinaciones de hechos están sostenidas por la evidencia sustancial que surge de la totalidad del expediente y; (3) si las conclusiones de derecho son correctas, para cuyo escrutinio el foro revisor no tiene limitación alguna. Sección 4.5 de la LPAU, 3 LPRA sec. 9675; *Reyes Salcedo v. Policía de P.R.*, 143 DPR 85, 93 (1997), que cita a D. Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme*, 3ra ed., Colombia, FORUM, 2013, pág. 688.

Al ejercer nuestra función revisora, el Tribunal Supremo ha reiterado que las conclusiones e interpretaciones de las agencias administrativas merecen una amplia deferencia judicial "ya que éstas poseen una vasta experiencia y un conocimiento especializado sobre los

---

[2] Véase, Apéndice del recurso, *Respuesta al Miembro de la Población Correccional* B-1362-24.

asuntos que por ley se les ha delegado". *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 186 (2009). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. De tal forma, los tribunales debemos respetarlas "a menos que la parte recurrente establezca que hay evidencia suficiente en el expediente administrativo para demostrar que la agencia no actuó razonablemente". *Borschow Hosp. v. Jta. de Planificación*, 177 DPR 545, 566 (2009), que cita a *Hatillo Cash & Carry v. A.R.Pe.*, 173 DPR 934 (2008); *Otero v. Toyota*, 163 DPR 716 (2005); *Rivera Concepción v. A.R.Pe.*, 152 DPR 116 (2000). De otro modo, "los tribunales no [debemos] intervenir o alterar las determinaciones de hechos de un organismo administrativo 'si las mismas están sostenidas por evidencia sustancial que surja del expediente administrativo considerado en su totalidad'". *Otero v. Toyota*, *supra*, págs. 727-728, que cita a *Pacheco v. Estancias*, 160 DPR 409 (2003).

Las determinaciones de hechos del ente administrativo se sostendrán si se basan en la evidencia sustancial que obra en el expediente, considerado en su totalidad. De otro lado, las conclusiones de derecho serán revisables en todos sus aspectos por el foro revisor. Los tribunales, como conocedores del derecho, no tienen que dar deferencia a las interpretaciones de derecho que hacen las agencias administrativas. *Olmo Nolasco v. Del Valle Torruella*, 175 DPR 464, 469-470 (2009). No obstante, los tribunales no pueden descartar liberalmente las conclusiones e interpretaciones de la agencia. Incluso, en los casos dudosos, y aun cuando pueda haber una interpretación distinta de las leyes y reglamentos que administran, "la determinación de la agencia merece deferencia sustancial*". JP, Plaza Santa Isabel v. Cordero Badillo, supra*, pág. 187.

Cónsono con la normativa antes citada, nuestro examen revisor consiste en evaluar si la determinación impugnada es razonable y si se ajusta a la evidencia sustancial contenida en el expediente administrativo;

o, por el contrario, si la decisión de la recurrida constituye un abuso de discreción por su arbitrariedad e irracionabilidad.

Es pertinente señalar que es un "principio rector que meras alegaciones y teorías, como tampoco argumentos forenses, constituyen prueba". *Pereira Suárez v. Jta. Dir Cond.*, 182 DPR 485, 509 (2011), que cita con aprobación a *Alberty v. Bco. Gub. de Fomento*, 149 DPR 655 (1999); *Pueblo v. Amparo*, 146 DPR 467, esc. 1 (1998); *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 DPR 497 (1994); *Ramos, Escobales v. García, González*, 134 DPR 969 (1993). Es decir, las alegaciones o teorías por sí solas no constituyen evidencia, sino que la parte promovente de una acción tiene la obligación de presentar evidencia que sustente sus alegaciones. El Alto Foro ha indicado que este principio aplica también a los procedimientos administrativos. *Id.*, pág. 510.

**B.**

El Artículo VI, Sección 19 de la Constitución de Puerto Rico expresamente establece la política púbica del Estado de *"reglamentar las instituciones penales para que sirvan a sus propósitos en forma efectiva y propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social"*. Artículo VI, Sec. 19, Constitución del Estado Libre Asociado, LPRA, Tomo 1, ed. 2023, pág. 462. Así, la Asamblea Legislativa de Puerto Rico aprobó el Plan de Reorganización Número 2 del Departamento de Corrección y Rehabilitación de 2011 (Plan 2), que fue creado al amparo de la Ley de Reorganización y Modernización de la Rama Ejecutiva del Gobierno de Puerto Rico de 2009, Ley 182-2009, que expone lo siguiente:

> [L]a política pública del Gobierno de Puerto Rico a través de la creación de un sistema integrado de seguridad y administración correccional donde las funciones y deberes se armonicen en un proceso facilitador a la imposición de penas y medidas de seguridad, así como a la custodia de ciudadanos que han sido encontrados incursos en la comisión de un delito o falta y que establezcan procesos de rehabilitación moral y social del miembro de la población correccional o transgresor, a fin de fomentar su reincorporación a la sociedad. Artículo 2 del Plan de

Reorganización Número 2 del DCR de 2011, 3 LPRA Ap. XVIII, Art. 2.

Por su parte el Artículo 7, inciso (aa) del precitado Plan 2 le confirió autoridad al *DCR* para:

[A]doptar, establecer, desarrollar, enmendar, derogar e implementar reglas, reglamentos, órdenes, manuales, normas y procedimientos para el funcionamiento efectivo del Departamento y de los organismos bajo su jurisdicción, a los fines de regir la seguridad, la disciplina interna y la conducta de funcionarios, empleados y de la clientela, así como los programas y servicios. Artículo 7 del Plan de Reorganización Número 2 del DCR de 2011, 3 LPRA, Ap. XVIII, Art. 7.

En cumplimiento con el precitado mandato, el DCR adoptó el Reglamento Número 8583 de 4 de mayo de 2015 para atender las solicitudes de remedios de los confinados, conocido como el *Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento 8583*, (Reglamento 8583). Reglamento para Atender las Solicitudes de Remedios Administrativos Radicadas por los Miembros de la Población Correccional, Reglamento Núm. 8583, Departamento de Estado, 4 de mayo de 2015. En este, se establecen los procedimientos para atender las solicitudes de remedios administrativos que presentan los confinados. Además, el objetivo principal del Reglamento 8583 es ofrecerle a un confinado la alternativa de que un organismo administrativo atienda sus solicitudes de remedio de primera mano, de modo que se reduzca la radicación de pleitos en los tribunales por esa razón. Ello es así, toda vez, que la propia agencia en la cual se encuentra el confinado, debe ser el mejor ente para atender sus necesidades.

El Reglamento 8583 se promulga en virtud de la Ley Núm. 96-2476 conocida como *Civil Rights of Institutionalized Person Act* del 23 de mayo de 1980 y extensiva a Puerto Rico por disposición de la propia ley federal. 42 USC 1997 *et seq.*

Al amparo del Reglamento 8583, el DCR tiene jurisdicción, a través de su *División de Remedios Administrativos* para, entre otros asuntos, atender aquellas solicitudes de remedio presentadas por un confinado

que estén relacionadas con actos o incidentes que afecten su bienestar físico o mental, su seguridad personal o su plan institucional. Reglamento 8583, Regla VI-Jurisdicción, (1) (a).

Conforme a las definiciones del Reglamento 8583, una solicitud de remedio se refiere a aquélla presentada por escrito por un miembro de la población correccional debido a una situación, relacionada a su confinamiento, que afecte su calidad de vida y seguridad. Reglamento 8583, Regla IV-Definiciones, (24). Asimismo, señala el reglamento que los confinados tienen la responsabilidad de presentar las solicitudes de remedios **en forma clara**, concisa y honesta, estableciendo las fechas y nombres de las personas involucradas en el incidente. Reglamento 8583, Regla VII- Responsabilidades del miembro de la población correccional, (1). Igualmente ofrecerá toda información necesaria para dilucidar su reclamo efectivamente. *Id.* Por su parte, el evaluador, entre otras cosas, es el responsable de evaluar la solicitud de remedio y contestar la misma por escrito, conforme a la respuesta del superintendente, encargado del Hogar de Adaptación Social, coordinador del Centro de Tratamiento Residencial o supervisor de Servicios de Alimentos dentro del término establecido. Reglamento 8583, Regla IX-Funciones Específicas del Personal de la División, 3 (d) (k).

Ahora bien, el evaluador tiene la facultad para desestimar las solicitudes de remedio cuando **el confinado emite opiniones o solicita información en su solicitud que no conllevan a remediar una situación de su confinamiento**. Reglamento 8583, Regla XIII-Procedimiento para emitir respuestas, 5 (g).

**III**

En este caso, el recurrente presentó una *Solicitud de Remedio Administrativo* ante el DCR. Allí relató algunos incidentes ocurridos el 4 de octubre de 2024, en los que se vieron involucrados varios oficiales.

Como mencionamos previamente, una solicitud de remedio administrativo va dirigida a atender cualquier queja o agravio sobre

asuntos relacionados al bienestar físico, mental, seguridad personal o el plan institucional de un miembro de la población correccional. Esta solicitud puede ser desestimada cuando el confinado emite opiniones o solicita información en su solicitud que no conllevan a remediar una situación de su confinamiento.

Al evaluar los documentos pertinentes al recurso de revisión judicial ante nosotros, observamos que las alegaciones del Sr. Barreiro Vázquez no son claras y se basan en opiniones sobre lo sucedido el 4 de octubre de 2024. El recurrente no especifica qué tipo de palabras soeces utilizaron los oficiales, ni los nombres por los cuales se refirieron a su cabello. Tampoco especifica el nombre de algunos de los oficiales que se encontraban en el lugar el día de los hechos. Asimismo, tampoco señala qué mencionaron los oficiales sobre su religión. Así pues, solo concluye que se trata de una represalia, pero no ofrece más detalles sobre la misma, por lo que se trata de meras especulaciones. A tal efecto, se limitó a dar su opinión sobre la situación que estaba pasando sin poner a la agencia en condiciones para remediar la situación. Incluso, el Sr. Barreiro Vázquez no solicita un remedio en específico sobre dichos hechos.

Aun cuando interpretemos liberalmente las alegaciones del recurrente, las adoptemos como ciertas y las consideremos de la manera más favorable a este, es forzoso concluir que la solicitud de remedios presentada no aludía a una situación particular ni definida para que el DCR pudiera conceder un remedio adecuado. Por tanto, procedía la desestimación de la *Solicitud de Remedio Administrativo*. Además, cabe señalar que, según el recurrente, ya existe un pleito instado por los mismos hechos de este caso.

Colegimos que, en el caso ante nuestra consideración, el recurrente no derrotó la presunción de corrección en cuanto la decisión administrativa, conforme con la LPAU y la reglamentación aplicable. De este modo, solo plasmó alegaciones, teorías y conjeturas que no demostraron que el DCR actuara de manera irrazonable, ilegal ni de

forma arbitraria en la determinación recurrida. En virtud de la deferencia que debemos al foro administrativo, y la falta de evidencia que logre rebatir la presunción de corrección que le asiste a la resolución recurrida, resolvemos que procede confirmar la misma.

**IV**

Por los fundamentos antes expuestos, confirmamos la resolución recurrida.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones